420 So.2d 1128 (1982)
STATE of Louisiana
v.
Joe C. RIVERS.
No. 82-KA-0187.
Supreme Court of Louisiana.
October 18, 1982.
*1129 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., William R. Alford, Abbott J. Reeves, Jr., and Peter J. Garcia, Asst. Dist. Attys., for plaintiff-appellee.
S. Austin McElroy, Covington, for defendant-appellant.
*1130 WARD, Justice Pro Tem.[*]
The St. Tammany Parish Grand Jury indicted the defendant Joe Rivers, charging him with first degree murder, La.R.S. 14:30. After a jury trial, he was found guilty as charged and sentenced to life in prison without benefit of parole, probation or suspension of sentence. Defendant appeals the conviction and specifies four assignments of error. Although initially seven assignments of error were claimed, three were not argued, and they are considered as abandoned.

FACTS
On March 24, 1981, the body of Larry Lyons, a twenty-one year old murder victim, was discovered near a small pond in a wooded area, a short distance from the Interstate 10 in Slidell, Louisiana. His fishing equipment was found nearby, and Lyons had apparently stopped on his way home from work to fish when he was robbed of his car, a 1966 Plymouth, and stabbed to death. The victim's wife provided investigating officers with a full description of the missing car, including the license and the vehicle identification number; and the information was put through the National Crime Information Center Computer.
All of the testimony and evidence indicate that on March 25, 1981, the day following the murder of Lyons, two men driving the stolen 1966 Plymouth stopped at a Shell station in Spanish Fort, Alabama. The car was being driven erratically; and when the two men got out, they created a disturbance, and it was obvious they were intoxicated. When they finally left, at about 12:30 p.m., they almost struck the service station attendant's parked car, and she called the Alabama State Police and gave them a description of the men and the white 1966 Plymouth, which then had a Florida license plate.
After taking the complaint, Officer Green reported the tag number to his headquarters and then drove east on the interstate to pursue the suspects. Green passed a stopped white 1966 Plymouth with a Florida tag about 1:00 p.m., and observed the defendant, Joe Rivers, standing outside the car and the driver, Troy Oatsvall, in the car behind the driver's seat. He continued on and drove to the nearest turnaround where he parked and waited for the Plymouth, which passed about two minutes later. Green followed the Plymouth for a short while and then pulled the car over. Troy Oatsvall got out, and Green and he talked for a few minutes before Green arrested him for violation of an Alabama statute of driving under the influence. Green put Oatsvall in the back of the police car while he spoke with Rivers, whom he determined to be too intoxicated to leave on the highway. Although Rivers was not placed under arrest, Officer Green made it clear that Rivers had to go with him, and had he resisted, Green would have arrested him for being intoxicated on the highway. Green then transported both men to Daphne, Alabama, where Oatsvall was placed in jail and charged with driving while under the influence. Rivers, however, was not then charged with any crime, and he was permitted, even assisted, to make several telephone calls trying to find someone to come get him.
The car was left at the scene, but Green took the vehicle identification number, which was relayed to the NCIC computer. He received a computer report about 1:40 that the vehicle was stolen in a robbery in Slidell and that someone was murdered during the robbery. Green immediately advised Oatsvall and Rivers of their Miranda rights and of the information he had received from the computer, and then he arrested both men for bringing stolen property into the state. Neither Oatsvall nor Rivers made statements at that time.
In midafternoon, about 3:30 p.m., the two defendants were taken in separate cars to the Baldwin County jail in Bay Minette, Alabama, and a wrecker was sent out to *1131 tow the car from the interstate, and it was placed in a local garage. Rivers was again read his Miranda rights, and he was questioned, but he denied having any knowledge of the murder. In the meantime, a toxicologist examined the car and removed knives and bloody clothing from it.
On the same evening, at about 6:00 p.m., two officers from the St. Tammany Parish Sheriff's Office, LaRocca and McGehee, arrived in Baldwin County. At about 8:00 p.m., LaRocca advised Rivers of his Miranda rights and questioned him about the murder. At that time, Rivers acknowledged that he had been in Slidell, and that he had taken the automobile, and that some bloodstained clothes belonged to him; but he refused to answer any questions about the killing.
Later, a warrant for the arrest of Rivers was obtained, and after he waived an extradition hearing, Rivers was returned to St. Tammany Parish. On April 2, 1981, a search warrant was issued, and a blood sample was taken from Rivers. Then, on April 7, 1981, Rivers requested to speak with LaRocca and McGehee, saying he wanted to ask them some questions. LaRocca and McGehee, out of an abundance of precaution, advised him of his Miranda rights for the fourth time and reminded him that he was already represented by court-appointed counsel. Nonetheless, Rivers wanted to speak with the officers, and the statements, the questions, and the answers were recorded on a tape. In response to questioning, the defendant admitted that he had taken the victim's car and that he owned both the pocket knife and blood-stained clothing found in the car.
Rivers claims that the Trial Judge erred in denying his motion to suppress (1) the first oral statement he made to Louisiana officials while he was still in Alabama, (2) items of evidence seized from the victim's car, (3) the taped statements made in St. Tammany Parish, and (4) the blood sample taken from him.

ASSIGNMENT OF ERROR NO. 1
Rivers now argues that the incriminating statements which he made in Alabama to Louisiana police should be suppressed because they were the fruit of an illegal arrest and tainted. Rivers contends that when the Alabama State Police took him from the car on the interstate, the police made an illegal warrantless arrest, and that the connection between the illegal arrest and defendant's statements was not sufficiently attenuated to purge the statements from being considered fruit of an illegal arrest.
We believe, however, that even if the initial custody of Rivers was an arrest, it was a legal one. State Trooper Green had observed him in an intoxicated condition in a public place, the highway, and, moreover, he had received a complaint that Rivers was intoxicated and had earlier caused a disturbance at the service station. There clearly was probable cause to arrest Rivers for violation of Alabama law,[1] however minor the infraction. Because of Rivers's intoxicated condition, Green wisely took him into protective custody for Rivers's safety, and acting with commendable restraint, did not charge him with a crime. After they reached the stationhouse, Rivers was free to leave at any time he was able to reach someone to come and pick him up.
It does not matter whether Rivers's initial custody is considered to be an arrest or protective custody, because Green's restraint of Rivers was legal. The Trial Judge denied the motion to suppress the statements Rivers made in Alabama. He was correct; the assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
Additionally, Rivers argues that the Trial Court erred in refusing to suppress items of physical evidence taken from the car in Alabama. The items were removed during a search made without a warrant by a State of Alabama toxicologist after the car had been towed off the interstate. Rivers argues that the search was illegal and that the evidence should be suppressed because *1132 there were no exigent circumstances to support a warrantless search.
In denying the defendant's motion to suppress, the Trial Court stated:
This search was made in the State of Alabama. The law of the land as expressed by the U.S. Supreme Court under which Alabama is bound which this Court concludes is the law of the State of Alabama requires or would suggest that in view of the fact that this was a stolen automobile and in view of the fact that these defendants are the occupants of that automobile, had no appropriate proprietary interest in that automobile, they had no reason to expect any privacy, and there was absolutely nothing wrong with the warrantless search of this vehicle.
Since this search occurred in Alabama, we are not concerned with provisions of the Louisiana Constitution, Article I, Section 5, which enlarged the rights of defendants to object to a search.[2] The inquiry is, therefore, directed to the interpretation of the Fourth Amendment by federal court decisions, particularly the Supreme Court decision, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 576 (1967), and the pertinent question is whether Rivers had a reasonable expectation of privacy in the stolen vehicle. In discussing Katz v. U.S., supra, this court in State v. McCommons, 398 So.2d, 1100, (La.1981), also discussed Fourth Amendment rights and the expectation of privacy:
The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Its essential purpose is to shield the citizen from unwarranted intrusion into his privacy. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). To invoke the protection of the Fourth Amendment, a person must show that he had a reasonable expectation of privacy which was invaded by the government's action. There are two facets to the proof:
"... first, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as `reasonable'..." Katz v. United States, 389 U.S. 347 [361], 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring).
We now hold that the occupant of a vehicle which he knows to be stolen does not have a reasonable expectation of privacy in that vehicle.

ASSIGNMENT OF ERROR NO. 3
Rivers argues that the Trial Court erred when he refused to suppress a taped statement which was given to Louisiana Deputies LaRocca and McGehee on April 7, 1981, because Rivers was interrogated outside the presence of his court-appointed counsel.
During the course of the interview, Rivers essentially repeated the information that was in his earlier oral statement: he had taken the victim's car; the blood-stained clothes were his; and he added that a pocketknife found in the car belonged to him. The record clearly reflects that defendant Rivers initiated the interview by requesting to speak to two Louisiana detectives. The officers again read the Miranda rights, and the taped interview indicates that they asked Rivers: "Since you have an attorney, do you still want to speak with us?", and Rivers answered that he did. The officers also honored the defendant's specific request not to speak about the killing since his attorney was not present, and they terminated the interview at defendant's request.
*1133 In the recent case of State v. Willie, 410 So.2d 1019 (La.1982), this court discussed waiver of defendant's rights under Miranda and distinguished these situations where the accused initiates the interview from those initiated by police.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the high court made clear that when an accused has invoked his right under Miranda to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.
We are convinced by the evidence, particularly the taped recording of the interview, that Rivers genuinely initiated the communication.
Somewhat as an aside, Rivers argues that the warrant for his arrest was defective because it failed to show probable cause and, therefore, his April 7th statements should be suppressed as fruit of an illegal arrest. The record proves otherwise.
Before going to Alabama to arrest Rivers, deputies LaRocca and McGehee had obtained a warrant which was supported by an affidavit, and the affidavit contained ample facts to show probable cause for the arrest of Rivers for the murder of Larry Lyons. The affidavit set forth the facts sufficiently to satisfy the requirements of La.C.Cr.P. Art. 202; the arrest was legal; the confession was admissible as evidence; the Trial Judge did not err when he refused to suppress it. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
Rivers argues that the Trial Court erred in refusing to suppress evidence of blood samples because the affidavit for the search warrant did not show probable cause for its issuance. The affidavit said to be lacking in probable cause stated:
On 3/24/81 Larry L. Lyons, white male, 12/4/59 of Slidell La. was the victim of a stabbing death. Joe C. Rivers, white male, dob 2/11/53 was arrested and charged in this murder. At the time of Rivers arrest and in the vehicle he was riding a pair or pants belonging to Rivers as well as a pair of shoes of his was found containing blood stains. The purpose of this search warrant is to obtain a sample of Rivers blood to compare with the evidence found, to compare with the victim's blood as compared to Rivers.
While warrantless searches are to be discouraged, applications for search warrants are to be encouraged, and
... affidavits must be given a commonsense and realistic interpretation; and a doubtful or marginal case will be resolved in favor of upholding the validity of the warrant.
State v. Babbit, 363 So.2d 690 (La.1978).
A reasonable interpretation of the affidavit in this case indicates that there was probable cause for the issuance of the warrant for the search, and in this instance, the search was a minimal intrusion of Rivers's privacy.
The Trial Court ruled there was probable cause. The issuance of a warrant is controlled by the requirements of C.Cr.P. Art. 162. We agree with the Trial Court that probable cause was sufficiently established, and we conclude this assignment is without merit.
For the reasons assigned, the sentence and conviction is affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs with reasons.
CALOGERO, Justice, concurring.
It is unnecessary for the majority in this case to decide as it does that the Louisiana Constitutional provision is inapplicable to *1134 an Alabama search. It may well be that just the reverse is true, at least with respect to a Louisiana prosecution.
Nonetheless, I agree that the trial court's refusal to suppress items taken from the car in Alabama was not erroneous. There could be no reasonable expectation of privacy as relates to the contents of this stolen car.
DENNIS, Justice, concurring.
I respectfully but reluctantly concur.
I cannot join the majority's opinion because of its treatment of assignment of error number two:
(1) The statement that "since this search occurred in Alabama, we are not concerned with provision of the Louisiana Constitution, Article I, Section Five" is too significant to be made without sufficient discussion. To be sure, the entire question of the application of a home state's procedural and/or substantive law to searches conducted in a foreign state which produce evidence that is to be utilized within the home state is perplexing. See generally 1 W. LeFave, Search and Seizurea Treatise on the Fourth Amendment § 1.3(c) (1978). The provision of the Louisiana Constitution in Article I, Section Five "seems to provide an affirmative right of every individual and not just a check on state action," L. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 23 (1974), and means at the very least that citizens prosecuted in Louisiana Courts will not be subject to the use of evidence seized in violation of our Constitution.
(2) While I agree that the facts of this case show that this defendant did not have a subjective expectation of privacy that society is willing to recognize, such that the Katz principle operates to excuse the police from the warrant requirement, I do not think it judicious to use this case to announce a blanket rule that one can never have a reasonable expectation of privacy in a stolen car. Under the circumstances of this case, the police had probable cause to believe that the defendant was a murderer fleeing in a stolen car which was also linked to the homicide. These circumstances justified their seizure of the automobile and their subsequent search without a warrant because this defendant could not have had any expectation of privacy in the vehicle. Any other commentary about expectations of privacy in stolen cars goes beyond the question presented by this case, and must be viewed as dicta.
For these two reasons I concur.
NOTES
[*] Judges William H. Byrnes and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Pro Tempore, with Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.
[1] § 13A-11-10, Public Intoxication, Code of Alabama.
[2] La. Const. of 1974 Article I, Section 5 provides:

"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."