UNITED STATES of America

v.

Cheryl A. NEWSOME.

No. CR. 9:00–CR–28.

United States District Court,
E.D. Texas,
Lufkin Division.

Nov. 6, 2000.

Reynaldo P. Morin, Assistant U.S. Attorney, Lufkin, TX, for plaintiff.

Guy Lee Womack, Houston, TX, for defendant.

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE

COBB, Judge.

CAME ON THIS DAY to be heard the Motion to Suppress Evidence filed by Defendant Cheryl Newsome. The Court having reviewed the motion and response on file and having heard oral argument is of the opinion that the motion be DENIED.

On May 11, 2000, 9:51 p.m., Defendant Newsome was driving north on the loop 224 bypass to U.S. 59 near Nacogdoches in a car she rented in Houston. Trooper Shannon Conklin was also driving north, in the inside lane, in his marked police car while observing an eighteen-wheeler truck with a burned-out tail light. The truck he was following was traveling alongside another eighteen-wheeler in the slow lane. Before he had taken any other action, Trooper Conklin observed a passenger sedan approach closely behind the truck in the slow lane, such that the car remained within about one car length while traveling at about fifty miles per hour. Trooper Conklin observed the sedan remain close behind the truck at that speed. He could not see the driver but was concerned that the driver might be driving in an impaired condition given the combination of the late night driving, the driver having run up close behind the truck at moderately high speed and remaining within one car length, and the fact that the driver did so within clear sight of a marked police car.

Based on his assessment of having probable cause to investigate a moving traffic infraction (following too closely) and a possibly impaired driver, Trooper Conklin activated his light bar and pulled the sedan over to the side of the road. The entire transaction was captured from that point on by the video camera that was activated in Trooper Conklin's police car when he turned on the light bar. The driver was identified as Defendant Cheryl Newsome.

Defendant Newsome initially offered Trooper Conklin a credit card, then presented a driver's license and a rental agreement showing that the car was to be returned by May 13. Trooper Conklin noticed the strong odor of fabric softener inside the car. Defendant Newsome appeared evasive and nervous, and avoided eye contact. She told Trooper Conklin that she was driving to Little Rock, Arkansas, on real estate business. She changed her story somewhat during questioning to say she would be handling rental property and that she would be staying in Little Rock until the following Tuesday (May 16). When Trooper Conklin challenged the conflict between that statement and her rental

papers, requiring the car be returned on May 13, she said she would fly back from Little Rock after returning her rental car. (Although Trooper Conklin did not notice it at that time, he later saw that the rental agreement stated the car was to be delivered to the Cleveland, Ohio, airport on May 13, a further discrepancy).

Trooper Conklin gave Defendant Newsome a warning instead of a traffic ticket. He then requested consent to search the car, which Defendant Newsome gave. He testified that he did so based on a reasonable suspicion of some illegal activity based on several factors and his experience. Those factors included: (1) Defendant Newsome's point of origin was Houston, which Trooper Conklin knew is an origin and destination point for narcotics; (2) the driver was a female who was traveling alone late at night, a circumstance he felt was sufficiently unusual under the circumstances to enhance his suspicions; (3) Defendant Newsome's variations of her story about buying and selling real estate in Arkansas versus being en route to handle rental property; (4) her statement that she would be staying in Arkansas for four days when her car rental agreement required it to be returned in two days; (5) Defendant Newsome appeared reluctant to answer Trooper Conklin's questions, seemingly nervous and avoiding eye contact; and, (6) the strong odor of fabric softener Trooper Conklin smelled inside the rental car, which he knew to be commonly used to cover the odor of illegal narcotics. His reasonable suspicion based on these factors, leading to him requesting consent to search Defendant Newsome's car, was clearly articulated.

Trooper Conklin received Defendant Newsome's consent and directed her out of the car. He looked inside the passenger compartment, thoroughly searched the trunk, and proceeded to the passenger side of the car where he found a colored bag. He lifted the bag, and found another bag inside of it. The inner bag was of the "gift bag" variety commonly used as gift wrap.

However, it was secured closed with brown packing tape which seemed out of context with gift wrap. Trooper Conklin felt the bag, which contained what felt to him like several brick-like objects. He could not feel their exact shape but noted that they were covered by some yielding material with a hard surface underneath and that the items shifted or moved under his fingers. Defendant Newsome saw Trooper Conklin handling the gift bag and asked him what he was doing with it. He asked her what it contained. She said the objects were books. Trooper Conklin began to open the bag. Defendant Newsome objected even when Trooper Conklin said he could peel the brown packing tape back without tearing the gift bag. Defendant Newsome then withdrew consent to search the bag. This was at approximately 10:02 and at 10:03, she withdrew consent to search the car further.

At that point, Trooper Conklin determined he had reasonable suspicion to continue to detain Defendant Newsome based on the accumulation of his observations up to the point of requesting consent for searching the car and his observations while feeling the contents of the taped-shut gift bag. Defendant Newsome's reaction to his handling of the bag was an added factor in his determination of having reasonable suspicion, all the reasons for which Trooper Conklin was able to articulate before the court. He did not continue to search the car or the bag, but placed the bag back in the car and shut the car door. He then called for the assistance of Deputy Constable Lanus Broderick of Nacogdoches County, who Trooper Conklin knew to be nearby in his police car and accompanied by the canine, Pekso. Deputy Constable Broderick is a certified dog handler and Pekso is a certified narcotics detection dog. They arrived within about a minute of being called, at approximately 10:04.

Deputy Constable Broderick determined from Trooper Conklin that there was no consent to search any portion of the interior of the car. Trooper Conklin told Depu-

ty Constable Broderick of his observations and that the gift bag was inside the car. Deputy Constable Broderick commenced a walk-around of Defendant Newsome's car with Pekso, conducting a "sniff" type search of the exterior of the car. They proceeded from the front bumper down to the driver's side door, where Pekso alerted to the presence of the scent of contraband. Deputy Constable Broderick determined at that time that he had probable cause to search the inside of the car for the narcotics causing Pekso to alert. Deputy Constable Broderick continued the exterior walk-down of the car and Pekso pulled back to the driver's side door in a second alert. They then continued around the back of the car and up the other side where Deputy Constable Broderick opened the passenger side door. In court, Deputy Constable Broderick testified that he did so before seeing if Pekso would alert on the passenger side because he already had probable cause to search the interior of the car based on Pekso's positive alert on the other side. Pekso immediately alerted to the gift bag and jumped up to "tackle" or "maul" it in Deputy Constable Broderick's words.

Deputy Constable Broderick then opened the bag and found three bundles inside, wrapped in terry cloth with black tar or oil inside. Recognizing the packages as containing controlled substances, he advised Trooper Conklin to arrest Defendant Newsome, which the Trooper then did. The packages were subsequently found to contain cocaine.

Defendant Newsome seeks to have the cocaine, all evidence seized pursuant to subsequent searches stemming from this initial search, and any statements she made to state or federal law enforcement agents suppressed as evidence. She asserts the evidence was obtained by an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. At a suppression hearing conducted on September 21, 2000, defense counsel argued that the search of Defendant Newsome's car was a warrantless search which was not incident to apprehension and not conducted by her consent.

 Warrantless searches and seizures are *per se* unreasonable unless they fall within a few narrowly defined exceptions. *See United States v. Cardenas,* 9 F.3d 1139, 1147 (5th Cir.1993), cert. denied, 511 U.S. 1134, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994). One such exception is when the subject of the search and seizure consents to it. Another is a search incident to a lawful arrest. *See United States v. Barlow,* 17 F.3d 85, 89 (5th Cir.), cert. denied, 513 U.S. 850, 115 S.Ct. 148, 130 L.Ed.2d 88 (1994). A warrantless arrest must be based on probable cause. *See United States v. Wadley,* 59 F.3d 510, 512 (5th Cir.1995).

Defense counsel here cites *United States v. Ho,* 94 F.3d 932 (5th Cir.1996) for the proposition that the arrest of Defendant Newsome was illegal because it was without warrant and because Trooper Conklin had no probable cause to continue the search of Defendant Newsome's car once she revoked her consent to search. Since the arrest was invalid and consent had been withdrawn, defense counsel asserts, any search and seizure made without warrant was unreasonable and violated the Fourth Amendment because it was not incidental to apprehension or to consent. This reasoning implicitly includes the argument that Trooper Conklin exceeded the scope of detention entered upon under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), when investigating the possible moving traffic infraction for which he pulled Defendant Newsome over.

In *Ho,* a suspect voluntarily yielded a portfolio for search by airport police. Upon seeing the police officer extract a blank white plastic card the size and shape of a credit card, the suspect struggled to return the card to his possession along with the portfolio. The police officer retained possession. It was not until after that instant that the police officer noticed

a magnetic "swipe" stripe on the back of the card and realized the card (and others in the case) was a counterfeit credit card. However, the officer later testified that he recognized that the suspect revoked consent to search at the moment he tried to recover the card before the officer saw the magnetic stripe.

The search and seizure by police which was found unreasonable in *Ho* is distinguishable from the detention by reasonable suspicion in this case. The Fifth Circuit enumerated several criteria in its determination that the police officer in *Ho* conducted an unreasonable search and seizure. The burden of proof was on the government to justify the warrantless search, but no explanation was presented as to why a white plastic card the size and shape of a credit card in a portfolio, standing alone, was sufficient to give a reasonable person probable cause to believe that it was a fraudulent credit card. The government produced almost no testimony regarding the extent of the arresting officer's knowledge and experience in the area of credit card fraud. In fact, the only background on his experience was his service in the Narcotics Interdiction Unit at the time of the arrest. The officer was on the lookout for drugs and not counterfeit credit cards and suspected the subject of the search of drug trafficking instead of credit card fraud. Thus, there was no predicate background in the investigation to support the criminal character of the card. Finally, the arrest did not occur until after the officer regained control of the card and portfolio and actually discovered the magnetic strip on the back of the card. *Ho* at 937–38.

■ In this case, however, Trooper Conklin testified that he had been trained extensively in traffic interdiction and has conducted nearly 120 traffic interdictions which developed into contraband interdiction between his service in South Texas and Southeast Texas. He teaches other police agencies on the subject of criminal interdiction. He testified as to the explicit indicia he recognized and observed in this case regarding the detection of narcotics related activities, including the strong odor of fabric softener used to conceal the smell of narcotics, the demeanor of the suspect, the origin of the suspect's travels, and the "feel" of the contents of the bag he started to examine before Defendant Newsome withdrew her consent to search. The U.S. Attorney certainly provided an explanation, via Trooper Conklin's and Deputy Constable Broderick's testimonies, as to how brick-like objects felt inside a bag being transported in a car smelling of fabric softener would reasonably lead an experienced officer to the conclusion that a narcotics offense was in progress.

In *Ho*, the police officer did not recognize he had no probable cause to continue the search. Based on far surer experience and indicia of narcotics-related activity, Trooper Conklin may well have been justified in proceeding on the basis of having objective probable cause at the time consent was revoked. However, he proceeded cautiously. He stated that, at the time consent was withdrawn, rather than having probable cause for a warrantless search or for an arrest, he had a reasonable suspicion of narcotics activity sufficient to justify extending the detention of Defendant Newsome and her car for a canine drug "sniff" of the car's exterior.

■ Ordinarily, an investigatory detention is limited to the investigating officer having "reasonable articulable suspicion" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether information gathered during a consensual interview and a partial search based on consent may provide reasonable suspicion justifying the extension of an encounter after consent is withdrawn then becomes the issue. The U.S. Attorney argues that it does, citing seven Circuit Court decisions in support of that assertion. None of the government's precedents are from within the Fifth Circuit, and this court has found none. Therefore, it is likely that this is an issue of first

impression within the Fifth Circuit. Regardless, the argument and weight of precedent are compelling.

The Second Circuit ruled that an extended detention for further investigation was reasonable based on officers' observations of the city of origin of the suspect and the particular bus on which he was riding, the suspect's confused and contradictory statements during consensual questioning, and his unlikely assertion that the suitcase he was carrying was not his, when the baggage claim tag on it was sequentially linked to that of the other bag he carried. Reversing the district court which had suppressed the cocaine found in the suitcase, the Second Circuit held that even if some nonconsensual detention occurred subsequent to the initial interview but prior to the arrest, it was warranted. *See United States v. Springer*, 946 F.2d 1012, 1017 (2nd Cir.1991).

The Sixth Circuit has also held, in circumstances substantially similar to those herein, that evidence found after a nonconsensual detention for the arrival of Drug Enforcement Administration officers was legally seized and not subject to suppression. This determination was based on reasonable articulable suspicion of illegal activity by the detaining officers due to the suspect's origin of travel, suspicious demeanor, use of a false name, an unusual bulge felt beneath his clothes during a consensual pat-down, and a large amount of cash observed in his car. *See United States v. Winfrey*, 915 F.2d 212, 216–17 (6th Cir.1990), cert. denied 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991).

In another very similar situation, the Seventh Circuit has held that, although the fact that a suspect met a "drug courier profile" was not probable cause of itself for a warrantless search, information obtained during a consensual interrogation created reasonable articulable suspicion to detain the suspect for a non-consensual investigation of her luggage by a drug detection dog. Thus, information obtained during the consensual interrogation ripened the situation into a valid *Terry* stop and further investigation. *See United States v. Sterling*, 909 F.2d 1078, 1083–84 (7th Cir. 1990)

The U.S. Attorney offers other precedent, validly supporting the government's argument herein to greater or lesser extent. *See United States v. Harris*, 31 F.3d 153, 155–56 (4th Cir.1994), cert. denied 528 U.S. 1080, 120 S.Ct. 550, 145 L.Ed.2d 427 (1999); *United States v. Delaney*, 52 F.3d 182 (8th Cir.1995), cert. denied 516 U.S. 878, 116 S.Ct. 209, 133 L.Ed.2d 141 (1995); *United States v. Kopp*, 45 F.3d 1450 (10th Cir.1995), cert. denied 514 U.S. 1076, 115 S.Ct. 1721, 131 L.Ed.2d 579 (1995); *United States v. Jones*, 973 F.2d 928 (D.C.Cir. 1992), cert. denied 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994).

Trooper Conklin made a justified *Terry* stop of Defendant Newsome to investigate an observed traffic infraction and potentially impaired driver. During the brief stop, he conducted a consensual interrogation of the defendant while observing indicia of narcotics related activity, including the defendant's point of origin, conflicting stories of her intended business, conflicting dates of her car rental return versus her anticipated return to Texas, her nervousness, and the strong odor of fabric softener. Trooper Conklin requested and obtained Defendant Newsome's consent to search the car based on his reasonable suspicion of illegal activity. During that search, he further observed by feel the fact that the contents of the gift bag sealed with brown packing tape were brick-like objects. Immediately upon his attempt to open the gift bag, the defendant revoked consent to search. All this occurred within the time of about twelve to thirteen minutes.

Trooper Conklin recognized the shape of the brick-like contents of the gift bag to be consistent with narcotics. When coupled with his earlier observations, he had a reasonable, articulable suspicion of narcotics-related activity which was suffi-

cient, consistent with the cases cited by the government, to further detain Defendant Newsome while awaiting the arrival of a narcotics detection dog. That arrival took another minute. The dog, Pekso, alerted twice on the driver's side door of Defendant Newsome's car. Deputy Constable Broderick, observing Pekso's alerts, then had sufficient probable cause to enter the car for further search, without a warrant, within the confines of reasonableness imposed by the Fourth Amendment. The fact that Deputy Constable Broderick opened the passenger side door without waiting to see if Pekso would alert thereon is unimportant. The entire elapsed time was about eighteen minutes and was entirely reasonable given the reason for the original traffic stop and the suspicion of illegal activity as developed during the ensuing investigation. Thus, whether Defendant Newsome had revoked consent or not and whether she had actually yet been arrested or not, the search of her car without warrant was reasonable. The analysis in *Ho*, being based on the investigating officer's lack of predicate background knowledge and experience in the criminal nature of the material seized, is inappropriate here. The search and seizure here was legal and valid. That being the case, evidence seized and statements made by Defendant Newsome, at that time or subsequently, are not subject to exclusion on the grounds of being tainted by an illegal search.

It is therefore,

ORDERED, that the Motion to Suppress Evidence by Defendant Newsome is hereby DENIED.