**Shannon KOHLER**

v.

**Pat ENGLADE, et al**

**No. CIV.A.03–857–D.**

United States District Court,
M.D. Louisiana.

Feb. 1, 2005.

---

Dennis R. Whalen, Baton Rouge, LA, for Shannon Kohler.

James L. Hilburn, Baton Rouge, LA, for Pat Englade, et al.

### RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

This matter is before the court on a motion for summary judgment (doc. 14) filed by the City of Baton Rouge, Pat Englade, Chief of Police for the City of Baton Rouge, and Christopher Johnson, a detective with the Baton Rouge City Police, ("defendants").[1] Shannon Kohler ("plaintiff") has filed an opposition (doc. 21). Subject matter jurisdiction in this court exists pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

---

[1] In a previous ruling (doc. 9), the court dismissed East Baton Rouge Parish as a defendant in this matter. However, the claims against Sheriff Elmer Litchfield were not dismissed in that ruling. Additionally, Elmer Litchfield is not listed among the defendants who are now seeking summary judgment (doc. 14). Therefore, it remains open whether or not defendant Litchfield should remain a party in this lawsuit.

## I. BACKGROUND

While investigating the deaths of several women in the Baton Rouge area, a law enforcement task force requested information from the public concerning possible suspects. The task force allegedly received two "tips" that Shannon Kohler ("plaintiff") was a person that should be interviewed. In plaintiff's complaint,[2] he contends task force detectives requested that he submit to a DNA test. When the plaintiff refused to submit to the DNA test, officer D. Hamilton allegedly told the plaintiff that officers would obtain a court order and his identity may be released to the media as a suspect.[3] Despite officer Hamilton's comments, the plaintiff maintained his refusal to voluntarily submit a DNA sample.

Subsequently, Detective Johnson prepared an "Affidavit of Seizure Warrant," and then submitted the warrant to Judge Richard Anderson of the Louisiana Nineteenth Judicial District Court for his signature. After obtaining the signed warrant, Detective Johnson and officer Hamilton went to the plaintiff's residence and collected a saliva sample from him. The plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Specifically, plaintiff alleges his right to privacy and the security of his person as guaranteed by Article I, Section 5 of the Louisiana Constitution and the Fourth and Fourteenth Amendments of the United States Constitution were violated.

---

[2] For the purposes of summary judgment, the court assumes the allegations contained in plaintiff's complaint are true. *See Ford v. Elsbury,* 32 F.3d 931, 938 (5th Cir.1994).

[3] Mr. Hamilton is not a named defendant in this matter. Moreover, the briefs are unclear as to the agency that employed Hamilton and his rank or designation. Hence, the court references Mr. Hamilton as "officer" for the sake of clarity.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[4] When the burden at trial rests on the non-moving party the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.[5] The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-moving party's case.[6]

■ Although this Court considers the evidence in the light most favorable to the non-moving party, the non-moving party may not merely rest on allegations set forth in the pleadings. Instead, the non-moving party must show that there is a genuine issue for trial.[7] Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden,[8] as unsubstantiated or conclusory assertions are incompetent summary judgment evidence and cannot defeat a motion for summary judgment.[9] If, once the non-moving party has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party.[10]

## III. ANALYSIS

As mentioned above, the task force received two anonymous tips causing Detective Johnson to investigate the plaintiff. A background investigation of the plaintiff revealed that he was convicted of burglary in 1982. He was also employed as a welder for a company headquartered on Old Perkins Road and with another shop on Choctaw Drive. The personal property of one of the victims, Gina Wilson Green, was discovered in an area of Choctaw Drive near the plaintiff's former place of employment.[11] Based on this information, and the plaintiff's refusal to voluntarily submit a DNA sample, Detective Johnson obtained a seizure warrant.

■ The plaintiff argues a "seizure warrant" is not provided for in Louisiana law. He further argues the seizure of his body is parallel to an "arrest" as defined by La.C.Cr.P. art. 201. The defendants argue that a "seizure warrant" is provided for in La.C.Cr.P. art. 161, et seq., which governs "search warrants." According to Louisiana jurisprudence, a warrant to obtain a sample of DNA is considered a "search warrant;" therefore, this Court finds the instant warrant is most accurately defined as a search warrant.[12] Never-

---

4. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. *Id.*

6. *Id.*

7. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8. *Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996).

9. *Bridgmon v. Array Systems Corp.,* 325 F.3d 572, 577 (5th Cir.2003)(citing *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 470 (5th Cir.2002)).

10. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also* FED. RULE CIV. P. 56(c).

11. Affidavit of Christopher Johnson, paragraph 9 (doc. 14).

12. *See State v. Rivers,* 420 So.2d 1128, 1133 (La.1982)(stating "this **search warrant** is to obtain a sample of [suspect's] blood" and the issuance of a warrant to obtain a suspect's blood is governed by La.C.Cr.P. art 162).

theless, whether examining a search warrant or arrest warrant, the same analysis shall be applied when determining if a warrant was properly issued.[13]

### A. *Liability of Detective Christopher Johnson.*

#### 1. *Omissions in search warrant.*

The plaintiff claims when Detective Johnson applied for the search warrant, he failed to inform the court that: (1) plaintiff was pardoned in 1996 for the 1982 burglary conviction; (2) plaintiff's shoe size was inconsistent with imprints left at one crime scene; and (3) plaintiff had not worked at the Choctaw Drive address for 11 years.[14] Furthermore, the plaintiff claims these are material omissions that violated his rights to privacy and due process as guaranteed by the state and federal constitutions.

■ On this issue, the Fifth Circuit has previously held, "[i]n order to constitute a constitutional violation sufficient to overcome the qualified immunity of an arresting officer, the material misstatements and omissions in the warrant affidavit must be of 'such character that no reasonable official would have submitted it to a magistrate.'"[15] In addition, the plaintiff in this lawsuit must demonstrate the specific omitted facts were "clearly critical" to a finding of probable cause.[16]

■ As the United States Supreme Court has noted, "[a]llegations of negligence or innocent mistake are insufficient."[17] Most importantly, "there must be allegations of deliberate falsehood or of reckless disregard for the truth."[18] While it is true the necessary falsehood can be perpetrated by omission, the omission must be of information that is not only relevant, but dispositive, so that if the omitted facts were included, there would not have been probable cause.[19]

In *Hale v. Fish*,[20] the Fifth Circuit examined whether omissions in an affidavit rose to the level of "critical" omissions. In *Hale*, kidnapping arrestees filed a § 1983 action against state and federal officials for violations of their Fourth Amendment rights.[21] There, the Court held, *inter alia*, that the affidavit supporting the arrest warrant contained critical omissions sufficient to amount to constitutional violations. The omissions in *Hale* were of a serious nature; specifically, the affidavit omitted information garnered from witnesses which tended to contradict the kidnapping allegations.[22]

In this lawsuit, the plaintiff complains Detective Johnson failed to inform the court that he received a pardon for his 1982 burglary conviction. Defendants argue the 1996 pardon did not negate the fact that plaintiff was a convicted burglar,

---

13. *See Hale v. Fish*, 899 F.2d 390, 399 (5th Cir.1990)(stating the "totality of the circumstances" test has been applied to determine whether search warrants *and* arrest warrants have been properly issued).

14. Plaintiff's complaint, paragraphs 10, 11 & 14 (doc. 1).

15. *Morin v. Caire*, 77 F.3d 116, 122 (5th Cir.1996)(quoting *Hale v. Fish*, 899 F.2d 390, 402 (5th Cir.1990)).

16. *Id.* (citing *Hale*, 899 F.2d at 400); *See also U.S. v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002).

17. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

18. *Id.*

19. *See U.S. v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir.1995).

20. 899 F.2d 390 (5th Cir.1990).

21. *Id.*

22. *Id.* at 400.

as far as it related to his prior criminal history.[23] A pardon is defined as, "[t]he act ... of officially nullifying punishment or other legal consequences of a crime."[24] Thus, it is not a finding of innocence and certainly does not negate the fact plaintiff had a criminal history.

Next, plaintiff complains that imprints left at one of the crime scenes indicated the murder suspect might wear a size 10 or 11 shoe.[25] The plaintiff further argues the police were aware that his shoe size was a 14.[26] Detective Johnson has testified that an experienced homicide detective would not rule out the plaintiff as a suspect merely because his shoe size did not match the imprint.[27] The detective further argues the imprint could have been left by a co-perpetrator, or an individual who had been at the crime scene prior to it being secured by the police.[28]

Third, the plaintiff alleges Detective Johnson omitted the fact that plaintiff had not worked at the Choctaw location in 11 years. Detective Johnson contends that the fact the plaintiff had not worked there recently did not negate the fact that plaintiff would have been familiar with the area. The Court must determine whether probable cause would have existed if the plaintiff's pardon, shoe size, and the fact he had not worked on Choctaw Drive in 11 years had been included in the warrant.

An FBI profile of the suspect suggested, among other things, that the murderer would have: (1) a job that required physi-cal strength; (2) a criminal record; and (3) tight finances. Although those factors could apply to many people, it caused officers to focus on those facts in conjunction with other information. Thus, the warrant in this case did not merely state the broad factors in the FBI profile.

Detective Johnson relied on several facts when drafting the warrant. First, the warrant contained information that the plaintiff was convicted of a felony. Next, the warrant accurately stated the plaintiff was currently unemployed. Detective Johnson asserts unemployment was a significant factor because that may have given the plaintiff an opportunity to be mobile.[29] More importantly, the warrant described that the plaintiff previously worked as a welder in the area of Choctaw Drive, near where an item of one of the victim's personal property was discovered. The warrant clearly stated the plaintiff was *"last employed"* for a company headquartered on Old Perkins Road with another shop on Choctaw Drive.[30] It did not imply that the plaintiff was currently working on Choctaw. Rather, Detective Johnson was demonstrating the plaintiff was familiar with a geographical location where property of one of the victims was discovered.

■ These facts, when examined in conjunction with the criteria in the FBI profile, were sufficient to support a finding of probable cause. However, it is important to note the mere fact the plaintiff met certain elements of an FBI profile would

---

**23.** The FBI profile suggested the murderer would probably have a criminal record. *See* Affidavit of Christopher Johnson, paragraph 5 (doc. 14).

**24.** *Black's Law Dictionary* 1137 (Bryan A. Garner ed., 7th ed., West 1999).

**25.** Affidavit of Christopher Johnson, paragraph 10 (doc. 14).

**26.** Plaintiff's Opposition, page 6 (doc. 21).

**27.** Affidavit of Christopher Johnson, paragraph 10 (doc. 14).

**28.** *Id.*

**29.** Affidavit of Christopher Johnson, paragraph 19 (doc. 14).

**30.** Affidavit for Seizure Warrant, Exhibit B (doc. 14).

not suffice to establish probable cause for obtaining a warrant.[31] This is especially true when the profile was so broad and vague that it cast a net of suspicion over thousands of citizens. Nevertheless, considering Detective Johnson conducted an additional investigation and used the profile only as a single factor, the Court finds there was sufficient probable cause.[32]

Even if the warrant had contained the omitted material, the aforementioned factors would still be sufficient to support a finding of probable cause. Therefore, the omitted facts were not clearly critical to support a finding of probable cause.

### 2. Reliability of informants.

 The plaintiff also complains that officers relied on anonymous tipsters in the warrant affidavit. When examining anonymous tips, the Court must apply a "totality of the circumstances" test.[33] An anonymous tip, by itself, does not constitute probable cause.[34] Additionally, "mere confirmation of innocent static details is insufficient to support an anonymous tip."[35] However, the jurisprudence in this Circuit is clear, anonymous tips when corroborated by further investigation may support a finding of probable cause sufficient to obtain a warrant.[36]

In this lawsuit, Detective Johnson conducted an investigation subsequent to the two anonymous tips. Specifically, he uncovered the plaintiff had a criminal record and was familiar with an area where the personal property of one of the victims was discovered. Moreover, as more fully explained above, the plaintiff fit several of the factors set forth by the FBI profile. When examining these facts in globo, it is clear that there was probable cause to obtain a search warrant.

### B. Liability of Chief Pat Englade.

Here, the defendants aver a supervisory official may not be held liable pursuant to section 1983 under a theory of respondeat superior. On this point, the Fifth Circuit has clearly stated, "[t]o be liable under section 1983, a [supervisory official] must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between the act of the [supervisor] and the constitutional violation sought to be redressed." [37]

The plaintiff's sole argument on this issue is that Chief Englade failed to supervise Detective Johnson at all.[38] Hence, plaintiff contends "when you give a policeman the power to ruin citizens' lives, you should supervise him." [39] While it is true that failure to supervise is a cognizable claim is some instances,[40] the plaintiff in this case has failed to allege any facts that would support such a claim.

---

**31.** See U.S. v. Newsome, 124 F.Supp.2d 1031, 1036 (E.D.Tex.2000) (stating the fact that a suspect meets a profile is not probable cause in itself) (citing U.S. v. Sterling, 909 F.2d 1078, 1083–84 (7th Cir.1990)).

**32.** See U.S. v. Mixon, 977 F.2d 921, 923 (5th Cir.1992) (stating all of the information taken together, including the profile, was more than enough to constitute probable cause).

**33.** See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**34.** Id. at 2326.

**35.** U.S. v. Mendonsa, 989 F.2d 366, 369 (9th Cir.1993).

**36.** See U.S. v. Mendoza, 722 F.2d 96 (5th Cir.1983) (holding anonymous informant's tip and subsequent surveillance provided probable cause that permitted a warrantless search).

**37.** Lozano v. Smith, 718 F.2d 756, 768 (5th Cir.1983) (citing Douthit v. Jones, 641 F.2d 345, 346 (5th Cir.1981)).

**38.** Plaintiff's Opposition, page 7 (doc. 21).

**39.** Id.

**40.** See Burge v. St. Tammany Parish, 336 F.3d 363 (5th Cir.2003).

There is no information to suggest Chief Englade played any role in plaintiff's arrest; therefore, he cannot be held liable for any personal involvement. Furthermore, the Court has described above that sufficient probable cause existed for Detective Johnson to obtain a warrant. Accordingly, the plaintiff cannot show a causal connection between Chief Englade's conduct and the alleged constitutional violation. As such, the Court finds Chief Englade is entitled to summary judgment.

### C. *Liability of City of Baton Rouge.*

In a section 1983 action, a municipality may not be held strictly liable for the acts of its non-policy-making employees under a *respondeat superior* theory.[41] Furthermore, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." [42] Stated differently, "[i]t is only when the execution of the government's policy or custom ... inflicts the injury that the municipality may be held liable under § 1983." [43]

This Court must examine whether there is a direct causal link between a policy or custom of the City of Baton Rouge and the alleged constitutional violation.[44] First, there is no information before the Court to suggest a policy or custom caused the alleged constitutional violation. Secondly, the Court has already found that a constitutional violation did not occur; therefore, there can be no causal link and no municipal liability. Accordingly, the City of Baton Rouge is entitled to summary judgment.

## IV. CONCLUSION

Accordingly, for the reasons assigned, the motion for summary judgment (doc. 14) filed by Christopher Johnson, Pat Englade, and the City of Baton Rouge is hereby **GRANTED**.

As set forth in footnote one of this ruling, it is not clear whether defendant East Baton Rouge Sheriff Elmer Litchfield remains a party in this lawsuit. Defendant Litchfield has not filed an answer in this matter. Furthermore, this Court previously granted a motion to dismiss filed by East Baton Rouge Parish; however, defendant Litchfield did not join in that motion. Therefore, the plaintiff is HEREBY ORDERED to show whether he intends to proceed against defendant Litchfield **within 5 days of this ruling.**

---

**41.** *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir.1992) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

**42.** *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (internal citation omitted).

**43.** *Id.* (internal quotations omitted).

